IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GARY A. LISTER,
    Plaintiff,

v.

Case No. 2:05-CV-495
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

DEFENSE LOGISTICS AGENCY, et al.,
    Defendants.

### OPINION AND ORDER

This matter is before the Court for consideration of the Motions for Summary Judgment filed by Plaintiff (Doc. #37, #41) and by Defendants (Doc. #36). For the reasons that follow, the Plaintiff's motion is GRANTED and the Defendants' motion is DENIED.

### I.

Plaintiff, Gary A. Lister ["Plaintiff"], brings this action against the Defense Logistics Agency ["DLA"]; Kenny K. Youn, Site Director of DLA; Robert E. Wallace, Chief of Executive Programs for DLA; and Donald H. Rumsfeld, United States Secretary of Defense (who has since been replaced by Robert Gates), claiming violations of the First and Fifth Amendments to the United States Constitution, and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

The parties have entered into a Stipulation of Facts, which is the record in this case. The Plaintiff has submitted an additional document entitled "Plaintiff's Statement of Undisputed Facts." The Defendants have taken issue with several factual assertions in this document. The Court does not find any of the disputed factual issues relevant to this

determination.

Plaintiff is employed by the Defense Supply Center, Columbus ["DSCC"], a division of the DLA. (*Am. Complaint* at ¶ 6). DLA is a component of the United States Department of Defense. (*Id.* at ¶ 7). The DLA has a policy which permits employees to post information of general interest on various "Notice Bulletin Boards" in the workplace. (*Stipulation of Facts* at ¶¶ 1,2). The February 6, 2002 Bulletin Board Policy states as follows with respect to Notice Bulletin Boards:

> Notice bulletin boards will be used for posters, announcements, events, and items of Union interest approved for posting in agreement entered into between Union and DSCC Management, information of general interest to associates and one time sale items. *Items reflecting religious preference*, ongoing businesses by associates and non-associates, i.e. Real Estate, Mary Kay, etc. are prohibited. (Emphasis added.)

(Exhibit attached to *Stipul. of Facts*).

The January 26, 2005 Bulletin Board Policy states the following with respect to Notice Bulletin Boards:

> Notice Bulletin Boards will only contain posters, announcements, events and items of Union interest approved for posting in agreement entered into between Unions and DSCC Management, information of general interest to associates, and one-time personal sale items. *Items reflecting religious preference, ongoing businesses by associates and non-associates, i.e. Real Estate, Mary Kay, etc. are prohibited.* All items placed on the Notice Bulletin Board must specify the date posted at the top of the document. (Emphasis added.)[1]

---

[1] The policy in effect at the time of the matter set forth in the Complaint has since been amended at least twice. The parties have agreed that the amendments of January 26, 2005 and January 26, 2006 are, for purposes of this case, legally indistinguishable. The 2002 and 2003 policies prohibit the posting of "items reflecting religious preference" while the 2006 policy prohibits "documents reflecting, discussing, or advocating religious preference."

2

(*Id.*).

The following are examples of postings which have appeared on the Notice Bulletin Boards:

    a. "ASMC Buckeye Chapter" - seeking donations for an inner city community service project;

    b. "Family Advocacy Program"- advertising training to help preserve families;

    c. "Need Help?" - an advertisement for social, physical, mental, and spiritual help;

    d. "Silent Auction" - an advertisement in support of the CFC;

    e. "Blacks in Government" meetings and "Blacks in Government" social.

(*Pl. Statement of Undisputed Material Facts*, hereinafter "*Undisp. Mat. Facts*" at ¶ 17).

On October 6, 2004, Plaintiff posted a flyer on the Notice Bulletin Board in Building 20 of the DSCC. (*Am. Compl.* at ¶ 22). The flyer contained the following language, in bold type and capital letters:

> "**DID YOU KNOW THAT WHEN YOU SUPPORT THE CFC[2] FUNDRAISERS . . . YOUR MONEY MAY GO TO SUPPORT THE FOLLOWING - \*ABORTION ON DEMAND \* ABORTION FOR TEENS \* SEXUAL PROMISCUITY \* HOMOSEXUAL AGENDA \* NEW AGE MYSTICISM CHOOSE TO MAKE A DIFFERENCE!**"

(*Id.* at ¶ 23). Plaintiff alleges that the flyer is motivated by his "sincere religious beliefs." (*Id.* at ¶ 26). The Plaintiff requested permission to post the flyer but the request was denied by Defendant Wallace on or about October 14, 2004. (*Undisp. Mat. Facts* at ¶ 49). According to

---

[2]CFC refers to the Combined Federal Campaign, a charitable fundraising program for federal employees.

3

Defendants, the request was denied because federal employees are not permitted to pursue "religious or ideological agendas . . . [or] campaigns during work hours." (*Id.* at ¶ 50). On January 6, 2005, Plaintiff filed a complaint for religious discrimination with the Equal Employment Coordinator. (*Id.* at ¶ 52).

Plaintiff's complaint was dismissed by the Coordinator on January 14, 2005 for failure to state a claim. (*Id.* at ¶ 33). Plaintiff now seeks relief in this Court and moves for summary judgment on his claims. Plaintiff requests a declaration that the Defendants' policy is unconstitutional on its face and as applied to the Plaintiff's case. Plaintiff also seeks to enjoin the Defendants from further enforcement of the policy. The Defendants have filed a cross-motion for summary judgment on the Plaintiff's claims.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that

4

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

5

**III.**

The Plaintiff contends that the Defendants have violated his First Amendment[3] right to the "free exercise" of his religious beliefs.[4] According to Lister, while other views are permitted and displayed on the bulletin board, only those related to religion are banned. He asserts that the banning of all religious materials from the bulletin board, while permitting the posting by employees of other associational matters, represents an unconstitutional form of viewpoint discrimination.[5]

The Defendants respond with three separate contentions. First, they claim that speech displayed on the bulletin board is attributable to the government and represents only government speech. Second, the defendants assert that, under *Connick v. Myers*, 461 U.S. 138 (1983), a government employee only enjoys First Amendment protection while speaking on matters of public concern. According to the defendants, the issues raised in this case involve

---

[3]The First Amendment to the United States Constitution states:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I.

[4]The Plaintiff also brings claims under the Equal Protection clause of the Constitution, made applicable to the federal government through the Due Process clause of the Fifth Amendment. He also brings claims under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*. Because the Court finds a violation of the First Amendment, and the relief sought in these other claims is identical, the Court declines to address these other issues.

[5]The parties do not disagree that the message the Plaintiff sought to post was of a religious nature. This Court notes that, with regard to some statements, whether the speech is of a religious nature is "an impossible task in an age where many and various beliefs meet the constitutional definition of religion." *O'Hair v. Andrus*, 613 F.2d 931, 936 (D.C. Cir. 1978). Government officials, including judges, are in a poor position to determine whether certain viewpoints, not expressly couched in religious terms but espoused by one or more organized faiths, are religious. Fortunately, this issue is not before the Court.

only private issues, not of public concern. Finally, the government contends that the regulations at issue are necessary in the interests of the efficient functioning of the workplace and are constitutionally reasonable restraints on public employees.

Both sides have presented cogent, well-researched arguments. The issues raised in this case are difficult. Surprisingly, there is a dirth of caselaw involving similar facts.

Several considerations, all undisputed, are worth mentioning before analysis of the contested issues. The government has no obligation to provide a bulletin board on which employees post notices. The government may also erect a bulletin board and place on it only messages from the government agency. In such cases, there would be no doubt that the government could prohibit any displays or information placed on the bulletin board by employees.

The more difficult issue raised in this case is whether the government may erect a bulletin board, permit employees to place "posters, announcements, events, . . . information of general interest to associates . . . " and prohibit any material "reflecting religious preference."[6] (Exhibit attached to *Stipulation of Facts*).

A.   **Nature of the Forum**

The first issue presented involves the nature of the forum in which the right to free exercise of religion and speech is implicated. The fact that the posting of the disputed flyer occurred on government property is not significant. "There is no question that the [public school] District, like the private owner of property, may legally preserve the property under its

---

[6]Other than religious documents, items involving an ongoing business are also prohibited. The issue of commercial speech is not implicated in this case.

7

control for the use to which it is dedicated." *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 390 (1993). Government property is not necessarily a site for the exercise of religion or free speech.

> The Supreme Court has adopted the following analysis:
>
> Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum. Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. See *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S., at 45, 103 S.Ct., at 954. Similarly, when the Government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest. Access to a nonpublic forum, however, can be restricted as long as the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46.

*Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 800 (1985).

In this case, the bulletin board is not accessible by the public, only employees of the government. At the same time, however, the board is open and available for employees to post matters addressing a broad range of topics or meetings, other than those of a religious character. From the Plaintiff's perspective, the board, because of the government's policy, is a limited public forum. In turn, from the Defendants' vantage point, no member of the public not employed at the base may post notices on the board. From this, it may be argued that there is no public forum.

The Court views the bulletin board as essentially a non-public forum. In such context, however, the government may restrict access, but only if such efforts are reasonable and

not an effort to suppress expression. Because the bulletin board is open to all employees, however, the board has some aspects of a limited public forum.

B.   **Nature of the Restrictions**

The government contends that, by excluding all religious or ideological items, the restrictions on use of the bulletin board are viewpoint neutral. The Plaintiff responds that the restrictions are designed to stiffle constitutionally protected speech. In the Court's view, this question is the core of the dispute.

There is no question that a regulation imposed by the government as to a nonpublic forum must be reasonable and "not an effort to suppress expression." *Cornelius*, 473 U.S. 800. This principle is even more compelling in the case of a bulletin board otherwise made available for postings by all employees.

Fundamentally, the Supreme Court has determined that a regulation which excludes all religions, while advancing or permitting advocacy of non-religious associations, violates the First Amendment. In *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384 (1993), the Supreme Court held that a public school district violated the First Amendment by opening school facilities for after school meetings of associations, other than religious organizations. The Supreme Court held :

> The Court of Appeals thought that the application of Rule 7 in this case was viewpoint neutral because it had been, and would be, applied in the same way to all uses of school property for religious purposes. *That all religions and all uses for religious purposes are treated alike under Rule 7, however, does not answer the critical question whether it discriminates on the basis of viewpoint to permit school property to be used for the presentation of all views about family issues and child rearing except those dealing with the subject matter from a religious standpoint.*

9

> There is no suggestion from the courts below or from the District or the State that a lecture or film about child rearing and family values would not be a use for social or civic purposes otherwise permitted by Rule 10. That subject matter is not one that the District has placed off limits to any and all speakers. Nor is there any indication in the record before us that the application to exhibit the particular film series involved here was, or would have been, denied for any reason other than the fact that the presentation would have been from a religious perspective. In our view, denial on that basis was plainly invalid under our holding in *Cornelius, supra*, 473 U.S., at 806, 105 S.Ct., at 3451, that "[a]lthough a speaker may be excluded from a non-public forum if he wishes to address a topic not encompassed within the purpose of the forum ... or if he is not a member of the class of speakers for whose especial benefit the forum was created ..., the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject."

*Lamb's Chapel* at 393-94. (Emphasis added).

The same principles were expressed in *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995). In *Rosenberger*, the University of Virginia, a state school, authorized payments for the printing of student publications. A student association that "primarily promotes or manifests a particular belief in or about a deity or an ultimate reality" was excluded from such funding. *Id.* at 823. Once again, the Supreme Court held that exclusion of all religious organizations from the benefits given to other student associations was unconstitutional. The Court observed:

> The dissent's assertion that no viewpoint discrimination occurs because the Guidelines discriminate against an entire class of viewpoints reflects an insupportable assumption that all debate is bipolar and that antireligious speech is the only response to religious speech. Our understanding of the complex and multifaceted nature of public discourse has not embraced such a contrived description of the marketplace of ideas. If the topic of debate is, for example, racism, then exclusion of several views on

10

> that problem is just as offensive to the First Amendment as exclusion of only one. It is as objectionable to exclude both a theistic and an atheistic perspective on the debate as it is to exclude one, the other, or yet another political, economic, or social viewpoint.

*Id.* at 831.

These cases involve the same principles as the matter at hand. In both cases, the schools were not required to make facilities or funding available to any group. Similarly, the Defendants in this case had no obligation to provide a bulletin board for its employees. Once, however, such benefits were voluntarily afforded by the government, an outright exclusion of religious groups or messages was unconstitutional. As the Supreme Court held in *Cornelius*, 473 U.S. at 811, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination."

This Court recognizes that the Plaintiff in this case is an employee of the federal government. Without such status, he would have no access to the bulletin board. In both *Lamb's Chapel* and *Rosenberger*, however, the facilities and funding were also unavailable to the general public. Nonetheless, the Supreme Court viewed the issue as framed by the public versus non public forum long adopted with regard to public property.

The Court concludes that the exclusion of religious materials from a government bulletin board otherwise available to all employees for virtually all non-commercial messages is unconstitutional. As the Court reads the policy, an employee may post a notice for a political rally, demonstration, school activity, etc. Yet, an employee is prohibited from advertising a Christmas play, or lectures at a synagogue or meetings at a mosque.

The Court again notes that the government is not required to provide a bulletin

11

board. If it chooses to erect such a board, it may restrict messages to those posted by the government. Once the government creates a board open for posting by employees of virtually any noncommercial message, it may not exclude those messages of a religious nature. The policies applicable to the bulletin board in this case unreasonably restrict the Plaintiff's rights under the First Amendment.

C.   *Pickering/Connick* **Analysis**

The Defendants contend that the issues raised in the Complaint should be analyzed and dismissed based on the holding in *Connick v. Myers*, 461 U.S. 138 (1983). According to the Defendants, Lister raised only issues of private concern, for which the First Amendment provides no protection to a public employee. This Court disagrees.

Prior to *Connick*, in *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court held that a teacher who was fired for writing a letter to a newspaper critical of a proposed tax levy was protected by the First Amendment. As an employee of the public school district, Pickering did not forfeit his right to speak out on public issues.

Later, in *Connick*, the Supreme Court refined the *Pickering* holding and concluded that public employees had the right to speak out only on matters of public concern. *Id.* at 143. Connick, a county prosecutor, had fired Myers for her repeated verbal objections to a transfer and her circulation among coworkers of a petition critical of Connick. The Supreme Court held that "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 148.

*Connick* holds that public employees do not enjoy First Amendment protection while speaking in a workplace setting on matters of only private concern. This Court concludes

12

that *Connick* simply does not apply in the case at bar. First, it is the *employer*, not the *employee*, who opened a channel for non-work related matters, including presumably issues of both public and private concern. Second, the employee in question has not sought to raise an issue "most accurately characterized as an employee grievance concerning internal office policy." *Connick*, 461 U.S. at 154.. Third, in *Connick*, the employer did not permit employees access to a channel of communication for non-work related matters and then seek to limit the subject matter or content of the communication.

The Court also finds that the decision in *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967 (7th Cir. 2000), while somewhat similar as to the facts, is inapposite. In Kuchenreuther, the plaintiff police officer taped on a bulletin board in a station house a document which stated "When you donate to U.P.A.F. ["United Performing Arts Fund"], you make the Chief and his Administration look good! Do you want to help that cause?" *Id.* at 970. The Court of Appeals applied the *Connick* analysis and found that the message did not involve a matter of public concern and was therefore beyond the protection of the First Amendment.

*Kuchenreuther* is distinguishable from this case. The bulletin board in question was not an open forum for employee posted messages. The message board was erected pursuant to the terms of a collective bargaining agreement. Only the Milwaukee Police Association was permitted to place notices on the bulletin board. It is of significance that the police union, rather than the City of Milwaukee, had exclusive control of the board. The First Amendment only prohibits government, not private associations, from restricting free speech.

Further, in *Kuchenreuther*, the plaintiff's message was highly critical of her ultimate superior, the chief of police. After *Connick*, the Sixth Circuit Court of Appeals has

instructed that courts are to balance a public employer's legitimate interest in maintaining an orderly and efficient workplace with the public employee's right to free speech. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 265 (6th Cir. 2005). Speech by a public employee on work related matters, if derogatory or insubordinate towards superiors, is not protected. *Id.* at 265.

Kuchenreuther made derogatory and insubordinate remarks concerning the chief of the police department. She posted her comments on a bulletin board not accessible by individual employees, such as herself. In the case at bar, the bulletin board was available to all employees. The remarks of Lister were critical of the CFC, but not of any particular supervisor.

D.  **Potential Disruption of the Workplace**

The Defendants further contend that the placement of Lister's message on the bulletin board had the potential to create "disruptions in the workplace." (*Def. Motion for Summary Judgment* at 21). The mere speculative claim of potential for disruption of the workplace is an insufficient basis by itself for a limitation of otherwise protected speech. *U. S. v. National Treasury Employees Union,* 513 U.S. 454, 476, (n. 21) (1995).

Further, if the use of the bulletin board causes, in fact, the disruption feared by the government, the Defendants can simply take down the board or limit the messages to those posted by the government.

E.  **Government Speech**

The Defendants also assert that the speech expressed on the bulletin board is governmental speech and created no First Amendment right on the part of the Plaintiff. It is true that the government itself may express a governmental view, and in the course of such

14

expression, exercise editorial control. *Rosenberger, supra* at 833. The speech at issue, however, must be attributable to the government. *Johanns v. Livestock Marketing Ass'n,* 544 U.S. 550, 560 (2005). The speech must be "effectively controlled by the Federal Government." *Id.*

The policies regulating the bulletin board expressly permit the placement of messages on the board by all employees. No governmental message is involved. The content of a message is determined by a single employee. The employee, under the policy, may post virtually any type of message, unless the content of the message relates to "religious preference" or an ongoing business. The messages placed on the bulletin board and particularly the message of the plaintiff are simply not governmental speech.

### IV.

The Plaintiff contends that the Defendants' policy is unconstitutional on its face and was also unconstitutionally applied as to him. For the reasons set forth above, the Court concludes that the Defendants' have unconstitutionally restricted the Plaintiff's First Amendment rights. As such, Lister is entitled to a determination that the policies have been unlawfully applied to him. Lister also seeks a declaration that the policies are facially unconstitutional, requiring this Court to hold that the policy cannot be lawfully applied to other potential circumstances.

In *Ayotta v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328 (2006), the Supreme Court, albeit in the context of a state statute, cautioned against "wholesale invalidation" of legislation. Recognizing that partial invalidation, if sufficient to cure an unconstitutional policy, is preferred, this Court finds that those portions of the three policies at issue which prohibit "Items reflecting religious preference" are facially unconstitutional.

15

## IV.

For these reasons, the Plaintiff's Motion for Summary Judgment (Doc. #37, #41) is **GRANTED**. The Defendants' Motion for Summary Judgment (Doc. #36) is **DENIED**.

This Court **ORDERS** by way of Declaratory Judgment that those portions of Defendants' three policies which prohibit the posting of materials expressing religious preference are in violation of the First Amendment to the United States Constitution are therefore invalid.

The Court permanently **ENJOINS** the Defendants from enforcing the three policies which prohibit the posting of materials expressing religious preferences.

**IT IS SO ORDERED.**

3-30-2007
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE